

**M|F|M**

MALONE FROST MARTIN PLLC

---

**PATRICK A. WATTS, PARTNER**
Direct Dial 314•669•5490
PWatts@mamlaw.com

Attorneys and Counselors
1200 S. Big Bend Blvd.
St. Louis, MO 63117

July 12, 2021

**VIA ECF**

Honorable Brian M. Cogan
United States District Court, E.D.N.Y.
225 Cadman Plaza East, Chambers 704S
Brooklyn, NY 11201

Re:     *White v. Credit Control, LLC*, 1:21-cv-3068-BMC

Dear Judge Cogan:

Pursuant to this Court's order dated July 9, 2021 (Doc. 13), Defendant Credit Control, LLC states the following:  Defendant has answered the Complaint.  To the extent any violation of the law occurred, which is expressly denied, it occurred as the result of a bona fide error notwithstanding procedures reasonably designed to avoid such an error.

Specifically, Credit Control, while denying that it "communicated" information to a "third party" in violation of the FDCPA, maintains procedures designed to avoid disclosure of information to third parties in violation of the FDCPA. For example, when it transmits information to the company that assisted in the processing and mailing of correspondence in this case, the data was encrypted when it was sent.  Also, upon information and belief, the data was sent to and through a computer system which automatically generates and mails correspondence – not to any person. The machines process the physical mailing – meaning no person is looking at account specific letters and stuffing envelopes in the vast majority of cases.

Further, based upon the processes and procedures at issue in the mailing process, upon information and belief, no person associated with the company who assisted in the mailing of correspondence viewed the information contained in the correspondence Credit Control sent to Plaintiff.  There was very little risk of it being viewed by any person.  It is Credit Control's understanding that, in only rare circumstances, would such information even be viewed by a person associated with the mailing company.

Credit Control likewise does not consider the transmission of data through a mail processing company's computer system without disclosure of that information to any person to be a "communication" under the FDCPA.  Also, Credit Control maintains that, to the extent its conduct is determined to be a "communication" and that it "communicated", the letter processing company is not a "third party" but is contracted as an operational arm of Credit Control.  Further,

to the extent sending encrypted data to the letter processing company's computer system was a "communication" to a third party, such communication was not "in connection with the collection of any debt" as the phrase is intended in 15 U.S.C 1692 c(b).

In almost all cases, the transmission of data through the company's computer system to process mail would be like Credit Control using Fed Ex to ship its collection correspondence. While Fed Ex would technically be in possession of the data regarding a consumer's account in a sealed envelope, it would be in only rare cases, and certainly against the normal processes involved, for any human to actually view the information that is transmitted *through,* as opposed to *conveyed to*, Fed Ex.

Defendant also may raise issues relating to Plaintiff's Article III standing to bring these claims – although this is not technically an affirmative defense. Plaintiff cites *Hunstein v. Preferred Collection Mgmt. Servs., Inc.*, 994 F.3d 1341, 1347-49 (11th Cir. 2021) for the proposition Plaintiff has article III standing. The Court in *Hunstein* relied heavily on the fact that it considered providing information to a mail processing company by a debt collector to implicate common law invasion of privacy concerns. In this particular case, it is believed that Plaintiff will be unable to meet his burden of demonstrating to the Court that any human viewed or was reasonably likely to view his account information – removing this matter for the common law "invasion of privacy" issues set out in *Hunstein*.

Further, the 11th Circuit's *Hunstein* decision was decided prior to the U.S. Supreme Court's decision in *TransUnion LLC v. Ramirez*, 2021 WL 2599472 (June 25, 2021). In *Ramirez*, the Court held that only plaintiffs concretely harmed by a defendant's statutory violation have Article III standing to sue in federal court, and that an injury is "concrete" only if it is closely related to a harm "historically or traditionally recognized as providing a basis for a lawsuit in American courts." Writing for the majority, Justice Kavanaugh reiterated Spokeo's reasoning that a statutory cause of action and the harm the plaintiff suffered are separate and distinct inquiries, and that standing requires a concrete injury. One way to determine whether the alleged harm suffered is concrete, he wrote, is to look for harms that are historically and typically held to be cognizable. "The mere existence of inaccurate information, absent dissemination, traditionally has not provided the basis for a lawsuit in American courts." *Id*. "Under longstanding American law, a person is injured when a defamatory statement "that would subject him to hatred, contempt, or ridicule" is published to a third party." *Id.*

Applying these principles, the Court had "no trouble" concluding that the 1,853 class members whose credit reports were published to third parties suffered a concrete injury sufficient to confer standing. The Court likened their harm to a reputational injury traditionally recognized in defamation claims.

Credit Control maintains that Plaintiff will not be able to demonstrate the "publication" of information in this case given the processes involved. Upon information and belief, Plaintiff will be unable to demonstrate that a single person associated with the mail processing company viewed the letter or was likely to view the letter or Plaintiff's account information.

On the other hand, the court in *Ramirez* held that the other 6,332 class members whose credit reports were not disseminated to third parties did not suffer a concrete injury sufficient to confer Article III standing. The Court concluded that the mere existence of the information on their credit reports was insufficient to establish an injury, as mere existence of erroneous information was not traditionally or historically recognized as a concrete harm in defamation cases. The Court also rejected Ramirez's argument that the prior risk of publication of negative information about the class was sufficient to confer standing. Although prior cases stated that a "material risk of harm" is sometimes sufficient to satisfy concreteness, the Court explained that those cases involved requests for injunctive relief, not money damages.

It is Credit Control's position that the data it sent through the mail processing company was not "published" to any person and Plaintiff will not be able to meet his burden of establishing standing. Further, from an operational perspective, the letter processing company acts as an arm of Credit Control, with procedures designed to prevent any disclosure of consumer account information to the outside world, and accordingly the mail processing company is not a "third-party" as envisioned by 1692c.

In another case against Credit Control before this Court regarding similar claims of disclosure to a mail processing company, on July 9, 2021, Judge Gary Brown issued a show cause order sua sponte requiring plaintiff to brief the following issues: "1. Does plaintiff claim any concrete, particularized injury in fact from the statutory violations alleged herein? If so, please set forth such injury/injuries with particularity.  2. If plaintiff is not claiming any such concrete injury, in light of the Supreme Court's decision in *Transunion LLC v. Ramirez*, Slip Op. No. 20-297, 2021 WL 2599472 (U.S. June 25, 2021), counsel shall provide any authority or basis for plaintiff to assert standing in this action, or indicate whether the action should be dismissed". *Sochet* v. *Credit Control* (EDNY 2:21-cv-03772-GRB-AKT).

Credit Control's investigation into these allegations continues.

                        Sincerely,

                        /s/ PATRICK A. WATTS

                        Patrick A. Watts